National Aeronautics and Space Administration

**Mary W. Jackson NASA Headquarters**
Washington, DC 20546-0001



September 9, 2022

Reply to Attn of:  NASA Small Business Innovation Research and
Small Business Technology Transfer (SBIR/STTR) Programs

Judge Aileen M. Cannon
United States District Court
Southern District of Florida

      Re:    *United States v. Juan Guillermo Gonzalez,* No. 22-CR-60101-AMC (S.D. Fla.) and
*United States v. Accelogic LLC and Intellectual Property Systems, LLC, a/k/a "Intellep,"* No. 22-cr-80080-AMC (S.D. Fla.)

Dear Judge Cannon:

Please allow this letter to serve as the victim impact statement of the National Aeronautics and Space Administration (NASA) in the above referenced action.

NASA submits that it was harmed $2,416,545.00, which represents the Agency's total loss incurred in these matters. NASA's losses resulted from the criminal misconduct of Defendants Juan Guillermo Gonzalez (Gonzalez) and Accelogic LLC's (Accelogic) (collectively Defendants), as detailed below.

NASA's actual loss totals $2,416,545, which represents the amount that NASA awarded and paid as a consequence of the Defendants' serious misconduct through seven Small Business Innovation Research (SBIR) contract vehicles between at least 2007 and 2017 identified in the Government's Exhibit C, Accelogic Receipt of Government Payments – March 2007 through June 2021.[1]

Accelogic is a Florida limited liability company.[2] Mr. Gonzalez was a founder, managing member, and the president of Accelogic.

---

[1] As discussed herein, the SBIR program and its companion Small Business Transfer Technology Research (STTR) program were established to provide increased opportunities for domestic small businesses in order to promote employment and competitiveness in the United States.
[2] Although Accelogic was originally formed and registered in Delaware, Mr. Gonzalez filed Articles of Conversion on March 27, 2017 to convert the entity from a Delaware limited liability company (LLC) to a Florida LLC. In addition, Mr. Gonzalez filed an application on behalf of Accelogic on November 26, 2008 with the Florida Division of Corporations for authorization to transact business in Florida.

Had NASA been aware of the serious and material misrepresentations of Accelogic via Mr. Gonzalez related to the NASA contracts, the Agency would not have awarded the relevant contracts to Accelogic.  Specifically, Mr. Gonzalez, as Accelogic's Managing Member and President, submitted fraudulent certifications for 43 contract proposals, resulting in 26 grants or contracts, and other related submissions, by wire, to several Federal agencies, including NASA, the Department of Defense (DOD), and the Department of Energy (DOE), in order to fraudulently induce the Government to award the maximum funding to Accelogic via SBIR contracts and STTR contracts. Such misrepresentations included, but were not limited to, false or misleading information about Accelogic's proposed performance and alleged resources, such as its outside funding, the promised employees or personnel and facilities to be used for research, and other fabrications regarding requested costs associated with proposals and Government contract negotiations. For example, under NASA contract NNX16CA11C (a Phase II SBIR contract proposing development of coding for accelerated compressive computing involving the NASA Cart3D software program), Accelogic was required to disclose all subcontractors and consultants who would work on the contract; confirm that all R&D work would take place inside the United States; and confirm that the contract would be performed in accordance with ITAR export control regulations. In the proposal, negotiations, and subsequent execution of the contract, Mr. Gonzalez, on Accelogic's behalf, provided these confirmations, disclosing several consultants but failed to mention any proposed involvement by Merida Tech, a company located in Venezuela, or its owner J.P. or other personnel. Despite representing that notices on ITAR/EAR or NASA's IT Security Management Plan had been reviewed, the Defendants also failed to mention or disclose that any work would be done in Venezuela or otherwise externally to the United States or by non-U.S. persons. In addition, Mr. Gonzalez, on Accelogic's behalf, misrepresented the personnel retained or expected to work on contracts. In their contract proposals, the Defendants listed personnel only by position and budgeted costs, as though positions had been filled, misleading evaluators to believe Accelogic had personnel in place necessary to complete the R&D work. When pressed for personnel names during negotiations for the previously noted Phase II NASA SBIR contract, the Defendants falsely reported that Ms. Ana Beatriz Hernandez and another individual, S.F., would serve as the two software engineers on the contract. The Defendants also overstated the number of people Accelogic employed.

Similarly, the Defendants also aided and abetted unauthorized access to Federal information and equipment, including data storage facilities, by several non-U.S. persons known and unknown to Federal Government, in violation of export controls, program limitations, and other restrictions or requirements.  To obtain awards, the Defendants falsely represented in negotiations and fraudulently certified that all work would be completed in the United States while failing to disclose Accelogic's ownership in foreign interests, and failing to disclose or obtain approval for anticipated collaboration with foreign parties domestically and overseas, such as with R.N., S.F., J.P. and other Merida Tech employees. Had NASA known of these material false certifications, misleading representations and omissions, and similar violations

of the letter or spirit of SBIR and STTR requirements as well as of applicable export and security controls, NASA would not have paid Accelogic under the SBIR contracts.

On May 17, 2022, in the U.S. District Court for the Southern District of Florida, an Information was filed charging: (1) Mr. Gonzalez with one count of aiding and abetting unauthorized computer access in violation of 18 U.S.C. §§ 1030(a)(2) and (c)(2)(B)(i); and (2) Accelogic with one count of Wire Fraud in violation of 18 U.S.C. § 1343 for knowingly conspiring to defraud money and property by means of materially false representations transmitted via interstate transmissions to support a scheme to defraud Federal and state small business oriented programs and awards. Of the Defendants' received $8,780,153.04 in total fraudulent SBIR/STTR or other wire transfers, $2,416,645 involved NASA SBIR contracts. Specifically, the Information alleged that the Defendants did:

b. prepare and cause to be prepared materially false and fraudulent proposals for awards under the SBIR and STTR programs, which included materially false information about, among other things, the

  i. employees who would be working on the projects,
  ii. that the research and development (R&D) work would occur inside the United States and be performed by U.S. persons, and
  iii. certifications, including about the truthfulness and accuracy of proposal information;

c. submit and cause to be submitted the materially false and fraudulent proposals for awards to the United States of America;

d. submit and cause to be submitted claims for payment to the United States of America;

e. receive and caused to be received payments from the United States of America on fraudulently-obtained awards;

f. spend and cause to be spent the payments from the United States of America for the awards in a manner materially inconsistent with the proposals submitted to the government;

g. repeatedly fail to comply with SBIR and STTR program requirements, such as by permitting undisclosed, non-U.S. persons to perform SBIR/STTR R&D work within or external to the United States and providing such persons unauthorized access to NASA and other Federal information or equipment and systems; and

h. misrepresent, conceal, hide, and cause to be misrepresented, concealed, and hidden, acts done in furtherance of the scheme and the purpose of those acts.

On June 22, 2022, the Defendants entered plea agreements with corresponding factual proffers. Specifically, each Defendant pled guilty to the charges in their respective Information (i.e. one count of wire fraud for Accelogic; and one count of aiding and

abetting unauthorized computer access for Mr. Gonzalez). They also stipulated and agreed that, had their matters proceeded to trial, the United States would have proven as true and correct beyond a reasonable doubt the facts forming a basis for their guilty plea with respect to the NASA, DOD, and DOE contracts.

As set forth in the Defendants' respectively filed Information, Plea Agreements, and Factual Proffers, NASA awarded Accelogic seven Small Business Innovation Research (SBIR) contracts that were impacted by the Defendants' criminal misconduct. The relevant NASA contracts awarded to and impacted by[3] the Defendant's False Statements include:

1) A Phase I contract: NNX07CA19P, to "Novel Supercomputing Approaches for High Performance Linear Algebra using FPGAs" for $100,000. NASA paid Accelogic in full for this Phase I contract;
2) A Phase II contract: NNX10RA04C, "Novel Supercomputing Approaches for High Performance Linear Algebra Using FPGAs" for approximately $600,000. NASA paid Accelogic in full for this Phase II contract;
3) A second Phase I contract: NNX11CD41P, "Accelerating HPC Applications Through Specialized Linear Algebra Clouds" for $100,000. NASA paid Accelogic in full for this Phase I contract;
4) A third Phase I contract: NNX13CA43P, to "Accelerating Communication-Intensive Applications via Novel Data Compression Techniques" for $125,000. NASA paid Accelogic in full for this Phase I contract;
5) A Phase II contract NNX14CA01C, to "Accelerating Communication-Intensive Applications via Novel Data Compression Techniques" for at least $748,421. NASA paid Accelogic in full for this contract;
6) A fourth Phase I contract NNX15CA33P, to "Accelerating Memory-Access-Limited HPC Applications via Novel Fast Data Compression" for approximately $130,000. NASA paid Accelogic MTI in full for this contract;
7) A third Phase II contract: NNX16CA11C, on "Accelerating Memory-Access-Limited HPC Applications via Novel Fast Data Compression" for approximately $755,000. To date, NASA has paid Accelogic approximately $703,125 for this contract.

The total amount NASA paid under these contracts is $2,416,645 according to contract records and the Defendants' factual proffers and stipulations. Had the Defendants' proposals truthfully represented the performance of SBIR awards as intended, such as performance of work overseas by non-U.S. entities or persons, Accelogic would not have been entitled to nor have received any of these NASA SBIR awards or funds. But for the Defendants' fraudulent statements did Accelogic receive any NASA SBIR awards or payments.

NASA, unaware of the Defendants' false statements and omissions, paid Accelogic, the referenced amounts on the above identified contracts.

---

[3] At least three more SBIR contracts were not awarded to Defendants, per Exhibit A, for which proposals were submitted to NASA on September 29, 2011 for $749,996.00; January 29, 2014 for $129,999.00; and January 20, 2017 for $124,999.00.

*NASA SBIR Program*

    (1) NASA participated in the Small Business Innovation Research (SBIR) program by awarding contracts for various research projects. This included research projects regarding acceleration of supercomputing and modifications to coding of NASA software such as Cart3D.

    (2) The SBIR Program was divided into three funding and development stages: Phase I, Phase II, and Phase III contracts. Phase I and Phase II contracts were competitive and required the offeror to submit separate proposals for consideration. In the submission of Phase I and Phase II certified proposals, the offeror was required to complete each section of the proposal, which included a: (a) certification cover sheet; (b) description of the work, including key personnel working on the project, and (c) budget summary.

    (3) Each certified proposal was then judged and scored on its own merits using factors such as: (a) the scientific/technical merit and feasibility of the project; (b) the experience and qualifications of key personnel, subcontractors, and the capabilities of the company's facilities; (c) the effectiveness of the proposed work plan; and (d) the commercial potential and feasibility. NASA relied upon the information provided by the offeror regarding those costs in order to negotiate the contract amount and determine whether the offeror's budget represented a fair and reasonable price.

    (4) Mr. Gonzalez, on behalf of Accelogic, submitted proposals, invoices, technical reports, and certifications to NASA to obtain all of the above listed contracts to and those referenced by the Defendants' information, plea agreements, factual proffers, and incorporated Exhibit A to receive payments from NASA based upon the Defendants' purportedly compliant performance of the contracts.

    (5) The SBIR Proposal Cover warned applicants that "providing false information is a criminal offense under Title 18 US Code, Section 1001, False Statement, as well as Title 18 US Code, Section 287, False Claims."

The types of contracts awarded by NASA in this case were Small Business Innovation Research (SBIR) federal contracts. Congress directed each federal agency with a research and development budget exceeding $100 million, which includes NASA, to establish an SBIR program and to provide a fraction of its budget to small businesses. Congress established the SBIR program to provide research and development assistance to small businesses in order to maintain and strengthen the competitive free enterprise system and the national economy. *See* 15 U.S.C. § 638(a). Specifically, the SBIR program was established by Congress to strengthen the role of small businesses in meeting Federal research and

development needs, to increase the commercial application of these research results, to stimulate technological innovation in the private sector, and to encourage participation of socially and economically disadvantaged persons and women-owned small businesses.

SBIR contracts are not the typical procurement contracts where the Government orders a specific product or good. For SBIR contracts, the Government's benefit of the bargain is to award money to eligible and deserving small businesses to foster innovation by them. In other words, the primary benefit to the Government, including NASA, from the SBIR program is not the funding of research and development, but the funding of research and development "by eligible deserving small businesses." *See United States ex rel. Longhi v. Lithium Power Technologies, Inc.,* 575 F.3d 458, 473 (5th Cir. 2009) (proper amount of damages for false SBIR proposals submitted in violation of the False Claims Act was the entire amount government paid to the defendants); *see also United States v. Maxwell,* 579 F.3d 1282, 1306 (11th Cir. 2009) (where contracts awarded were part of a government benefits program, the appropriate amount of loss is the entire value of the contract).

When a small business obtains SBIR funds through fraud and other serious misconduct, as did the Defendant here, it frustrates the purpose of these federal programs and siphons money away from eligible deserving small businesses. As a result of the falsity contained in the Accelogic proposals and submissions, NASA awarded seven SBIR contracts to Accelogic and provided federal funds to the Defendants instead of to a truly eligible, capable, and compliant small business.

Compounding this harm, the Defendants misused a significant portion of NASA's funds for personal enrichment and provided unauthorized access by non-U.S. parties to sensitive Federal information and systems for NASA coding and other software capabilities. Moreover, the Defendants' reliance upon unauthorized persons not only violated export controls as well as rendered their certifications false, but also resulted in delays of the work, requiring several modifications to extend the timeline for Accelogic to complete its work. According to the stipulations of the Defendants' plea agreements and incorporated factual proffers and filed information, the Defendants repeatedly misrepresented how Accelogic intended to perform R&D work, overstated Accelogic's resources, and further concealed how Accelogic actually performed the R&D work (e.g., reliance upon undisclosed non-U.S. persons, despite warnings against and certifications of compliance with export control regulations), all of which undermine the procedural integrity and SBIR objectives (to promote domestic employment, competition, and commercial growth or innovation by domestic small businesses), which, in turn, also undercut the overall reliability of the R&D work process and end products. Thus, any contemporaneous positive observations or feedback by NASA personnel on the Defendants' performance on these SBIR contracts was premised upon misunderstandings and falsehoods about the Defendants' actual (non)compliance with contract terms, program objectives, and other applicable requirements or regulations.

The damages to NASA go beyond the cost of the contract funds paid to the Defendants. The objectives and success of the NASA SBIR program cannot be accomplished without a high level of confidence in the selected firms. When companies and their officials commit fraud to obtain federal contracts that otherwise would have been awarded to qualified companies operating in good faith, the NASA "brand" and the nature of the reputation for assessing quality research within NASA's SBIR program are tarnished because the award process has been negatively impacted.

As noted in the SBIR fraud case of *U.S. v. Anghaie,* 2015 W.L. 163046 (N.D. Fla. Jan. 13, 2015), and as is equally true here:

> The gist of the offense lies in the fact that the contracts at issue were reserved for legitimate small businesses and the defendants knowingly made misrepresentations to qualify for those contracts. There is a real and substantial harm to the government when funds set aside for small businesses are diverted to other uses. The misrepresentations the defendant made were material to the agencies' decision to award the contracts to [Defendant] under the SBIR and STTR programs. By making those misrepresentations the defendants caused harm to the government and legitimate small businesses who otherwise would have received those funds.

Therefore, NASA's actual and total loss in this case is the amount that NASA paid to Accelogic, on the impacted contracts, in total $2,416,645. Additionally, of the NASA contracts awarded to Accelogic, one was referenced by three patents identified for forfeiture (i.e. Patent 10,305,980 and Patent 10,965,744 which each reference NASA contract NNX13CA43P as well as Patent Application US 2021/0218805 A1 which also references NASA contract NNX13CA43P). Had NASA been aware of the Defendant's serious misconduct and the fraudulent misrepresentations related to contract performance, NASA would not have awarded the contracts to Accelogic, and another small business would have been selected.

Accordingly, under these circumstances, any alleged end-product of the NASA SBIR contracts Defendants obtained by fraud is valueless because, as argued in *Anghaie, supra,* and accepted by the court there, the Government (in this case, NASA):

> was not seeking nor did it receive any economic benefit. Rather, it was seeking an intangible benefit – the ability to encourage small business scientific development. This being true, there was and can be no economic, tangible benefit to the agenc[y]. Indeed, the defendants' fraudulent misconduct only resulted in multiple harms. Because of their frauds, they received contracts to which they were not entitled and other[] honest and more deserving companies were denied funding. The fraud also hurt the integrity of the program, resulting in further harm when Congress evaluates the propriety of continuing funding. The funds for each program are finite. Finally, there is simply no way to

measure the innovations lost by not funding these other[] deserving, small businesses.

*See Anghaie* at *8. Citing *Longhi, supra,* the *Anghaie* court accepted the Government's argument. According to the court, the Government met its burden of establishing that it received no tangible benefit under the SBIR contracts in question, and that any intangible benefit was impossible to calculate. Accordingly, the Court held that the proper measure of the Government's damages is the full amount actually paid under the fraudulent SBIR contracts. *See Anghaie,* at *10.

Given the opportunity costs to other potential small business awardees and the risks posed to informational integrity of NASA, the Agency is harmed in the amount of $2,416,645.[4] Moreover, the serious fraudulent misconduct of the Defendants strikes at the heart of the integrity of the Federal acquisition process. For that reason, the Agency respectfully requests that it receive full restitution in the amount of $2,416,645 for the total loss the Defendants caused to NASA, including the breach in security of NASA information and systems, and from which they inappropriately benefited as a result of ill-gotten gains.[5]

Sincerely,


Carlos Torrez
Program Manager
NASA Small Business Innovation Research and
Small Business Technology Transfer (SBIR/STTR) Programs

Attachments

---

[4] While NASA recognizes the Accelogic plea agreement includes an Estimate noting restitution to NASA of $703,125.00, this does not constitute the full amount of harm to the Agency.
[5] In the alternative, NASA requests as a minimum floor of $703,125 as outlined in the Estimate for restitution to the Agency.